IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| William K. Edwards,<br><br>                Plaintiff,<br><br>vs.<br><br>Michael J. Astrue,<br>Commissioner of Social Security,<br><br>              Defendant.<br>_____ | Civil Action No. 8:08-896-HFF-BHH<br><br><br><br><br>**REPORT AND RECOMMENDATION**<br>**OF MAGISTRATE JUDGE** |

      This case is before the Court for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

      The plaintiff, William K. Edwards, brought this action pursuant to Section 205(g) of the Social Security Act, as amended, (42 U.S.C. Section 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security Administration regarding his claim for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act.

## **RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS**

      The plaintiff was 41 years old when he became disabled, and 48 years old at the time of the Administrative Law Judge's (ALJ) final decision. (R. at 46.) The plaintiff has a tenth grade education and has prior experience as a landscaper, machine operator, machine painter, and warehouseman. (R. at 67.) He claims he became disabled on August 20, 2000, due to epileptic seizures. (R. at 66.)

      The plaintiff filed applications for disability insurance benefits (DIB) and supplemental security income benefits (SSI) on August 20, 2000. (R. at 46-48, 215-17.) His applications

---

[1] A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

were denied in initial and reconsidered determinations. (R. at 32-40, 42-43). The plaintiff requested a hearing before an ALJ, which was held on July 13, 2007. (R. at 236-78.) In a decision dated September 26, 2007, the ALJ found that Plaintiff was not disabled. (R. 14-26.) As the Appeals Council denied the plaintiff's request for review (R. at 6-9), the ALJ's decision became the Commissioner's final decision for purposes of judicial review.

In making his determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the administrative law judge:

> (1)   The claimant met the insured status requirements of the Social Security Act through December 31, 2005.
>
> (2)   There is insufficient proof that the claimant has engaged in substantial gainful activity since August 2, 2000, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq*).
>
> (3)   The claimant has the following medically determinable severe impairments; borderline intellectual functioning: a seizure disorder; and a history of polysubstance abuse (20 CFR 404.1520(c) and 416.920(c)).
>
> (4)   The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> (5)   After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a wide range of work at all exertional levels, so long as he performs only simple tasks and avoids typical seizure hazards, which includes unprotected heights and dangerous moving machinery.
>
> (6)   The claimant is capable of performing past relevant work as a machine painter.
>
> (7)   The claimant has not been under a disability, as defined in the Social Security Act, at any time from August 2, 2000 through the date of this decision (20 CFR. 404.1520(f) and 416.920(f)).

**APPLICABLE LAW**

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. §423(a). "Disability" is defined in 42 U.S.C. §423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. §423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. *See* 20 C.F.R. §404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. *See Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. Social Security Ruling ("SSR") 82–62. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. §423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform

3

alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Richardson v. Perales*, 402 U.S. 389 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir.1966). Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## **DISCUSSION**

The plaintiff contends that the ALJ erred in failing to find him disabled. Specifically, the plaintiff alleges that the ALJ erred in (1) failing to give the opinion of his treating

4

physician controlling weight and (2) relying on the opinions of other non-treating, non-examining physicians. The Court will address each alleged error in turn.

**I.    TREATING PHYSICIAN**

The plaintiff first contends that the ALJ failed to give the opinions of his treating physician, Dr. Stanley I. Coleman, controlling authority or at least great weight. On July 22, 2002, Mr. Edwards was treated for a seizure disorder, by a physician in Dr. Coleman's medical practice. (R. 134.) The relevant records state that the plaintiff "has [a] seizure disorder" and that his "[l]ast seizure was in 1988." *Id*. On June 21, 2004, the plaintiff was agian seen for seizures. (R. at 132.) Dr. Coleman noted that due to his limited educational level, the plaintiff has only been able to perform manual labor. *Id*. Dr. Coleman further noted that the plaintiff's seizures impaired his ability to perform production or assembly line jobs. *Id*. Dr. Coleman stated that due to his age, he could no longer do heavy physical labor. *Id*. Dr. Coleman ultimately observed that:

> I think this man probably is going to end up being disabled because I do not believe he is going to be able to function any longer in a hard physical labor theater and I do not believe he is going to be able to mentally be trained to get a more sedentary job. I do not think he is going to be able to do that, we will see.

*Id*.

On July 13, 2004, Dr. Coleman reported that:

> Mr. Edwards has been a patient of mine for a number of years. During that time he has been treated for a seizure disorder. His seizures are well controlled, however the medication that he takes for them, which has been changed numerous times until he arrived at the medicine that did the best job in controlling his seizures causes sedation and decreased ability to concentrate. He has had numerous jobs but he is unable to meet any quotas and he is unable to maintain concentration enough to complete tasks and therefore he has been fired from numerous jobs, not due to absenteeism or any other problems, he just cannot concentrate enough to complete a task. Due to his educational level I think that a manual type job is the only thing he would be able to do, therefore I think at least at this point that he is disabled for this job or any other job.

(R. at 131.)

On November 27, 2004, Dr. Coleman completed Social Security Administration Form SSA-1152, Medical Assessment Of Ability To Do Work-Related Activities (Mental). (R. 164-166.) Dr. Coleman noted that the plaintiff's ability to make occupational adjustments, including use of judgment, dealing with work stresses, functioning independently, and maintaining attention and concentration, were all "poor." (R. at 164.) The plaintiff's ability to follow work rules and relate to co-workers was described as "fair" which means that his ability in these areas was seriously limited. (R. at 164.) Dr. Coleman noted that the plaintiff had poor concentration, inability to complete tasks, poor educational level, and inability to perform production work. *Id*. Dr. Coleman further noted that the plaintiff's ability to understand, remember and carry out complex or detailed job instructions was poor to none and his ability to understand, remember, and carry out simple job instructions was only "fair" meaning seriously limited. (R. at 165.) Dr. Coleman found that the plaintiff's former employer had terminated him because he could not keep pace with production or complete simple tasks over a protracted length of time during the workday. *Id*. Dr. Coleman further indicated that the plaintiff's ability to demonstrate reliability was poor to none and his ability to behave in an emotionally stable manner and relate predictably in social situations was only "fair" meaning seriously limited. *Id*.

The medical opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. *See* 20 C.F.R. §416.927(d)(2)(2004); *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig v. Chater*, 76 F.3d 858, 590 (4th Cir. 1996). Under such circumstances, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Mastro v. Apfel*, 270 F.3d at 178 (*citing Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992)).

A "medical opinion," is a "judgment[ ] about the nature and severity of [the claimant's] impairment(s), including [his] symptoms, diagnosis and prognosis, what [he] can still do despite impairment(s), and [his] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). However, statements that a patient is "disabled" or "unable to work" or meets the Listing requirements or similar statements are not medical opinions. These are administrative findings reserved for the Commissioner's determination. SSR 96-2p. Furthermore, even if the plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision. *See Blalock*, 483 F.2d at 775.

The ALJ expressly considered Dr. Coleman's opinions but declined to give them "any weight," finding that they were inconsistent with his own treatment notes. (R. at 25.) Specifically, the ALJ found that the plaintiff did not mention his history of seizures to Dr. Coleman until June 21, 2004, 12 days after he filed for disability. *Id*. The ALJ found Dr. Coleman's records silent as to concentration problems or difficulty doing physical labor. *Id.* The ALJ found that Dr. Coleman treated the plaintiff only twice in four years; never noted the plaintiff's Dilantin level results; never indicated epilepsy related problems; and never included any objective findings in support of his opinions. *Id*. The ALJ emphasized that the record revealed a total of two seizures in 18 years, one in 1988 and one on April 14, 2006. *Id*.

This consideration of Dr. Coleman's opinion fails in the following respects. First, June 21, 2004, was not the first time that the plaintiff had discussed his seizures with Dr. Coleman's medical practice. Two years previously, on July 22, 2002, he was seen by Dr. Landrum I. McCarrell, Jr., one of Dr. Coleman's colleagues. (R. at 134.) His seizure history was discussed and Dilantin was prescribed. *Id*. The ALJ acknowledges as much (R. at 25),

7

and yet implies in his decision that the seizure condition was somehow raised only for purposes of establishing disability, *id*.[2]  This is a strained characterization of the evidence.

Second, Dr. Coleman's opinion regarding the plaintiff's ability to perform work was based on numerous considerations, including seizures, the side effects of anti-seizure medication, poor education, and low I.Q.  (See R. at 131-32.)  The ALJ's consideration of Dr. Coleman's opinion does not address either the alleged effects of the plaintiff's medication or his mental functioning.  While some of these issues are treated in regards to the plaintiff's credibility (R. at 22-23), they are not considered in regards to Dr. Coleman's expert medical opinion, which tends to corroborate the plaintiff's own testimony.

A consideration of the medicinal issue seems essential.  First, Dr. Coleman indicates that the seizures are well-controlled by the medication, which may explain the want of seizures so emphasized by the ALJ.   As far as the Court can tell, there is not any clear evidence as to how long the plaintiff had been taking medication related to controlling his seizure condition.  Certainly, when he presented to Dr. McCarrell on July 22, 2002, it was for a *refill* of Dilantin, which necessarily implies that the plaintiff had already been on the prescription.  Accordingly, it seems inappropriate for the ALJ to make some judgment about the infrequency of the plaintiff's seizures without an examination of the controlling effects of the medication.

Moreover, the ALJ is not qualified to make any assumptions about what the lack of seizures under the circumstances might have meant regarding the quality of the plaintiff's impairment.  "An ALJ cannot play the role of doctor and interpret medical evidence when he or she is not qualified to do so."  *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007).  As a lay person, an ALJ is "simply not qualified to interpret raw medical data *in functional terms* . . . ."  *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (emphasis added); *see also*

---

[2] In fact, when the ALJ recounted the July 22, 2002 examination by Dr. McCarrell earlier in the decision, he actually wrote that the plaintiff had "presented to Dr. Coleman for a refill . . . ."  (R. at 19.)

8

*Manso-Pizarro v. Sec'y of Health & Human Services*, 76 F.3d 15, 17 (1st Cir.1996) (stating that "an ALJ, as a lay person, is not qualified to interpret raw data in a medical record"); *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir.1985) ("By independently reviewing and interpreting the laboratory reports, the ALJ impermissibly substituted his own judgment for that of a physician; an ALJ is not free to set his own expertise against that of a physician who presents competent evidence."); *Whitney v. Schweiker*, 695 F.2d 784, 788 (7th Cir.1982) ("Because an Administrative Law Judge as a rule is not a doctor, he should avoid commenting on the meaning of a test or clinical x-ray when there has been no supporting expert testimony."). Without some expert interpretation of the evidence, the ALJ cannot conclude, based exclusively on the lack of seizures, that the infrequency was simply due to the mildness of the condition as opposed to some other explanation, to wit, use of controlling medications. That is not a determination that a lay adjudicator can make. *See Figueroa v. Secretary of Health, Ed. and Welfare*, 585 F.2d 551, 554 (1st Cir.1978) ("[A] layman is in no position to make any such determination on this record. It would have been appropriate for the administrative law judge to have sought further medical evidence, or to have made some further inquiry, since appellant raised the question.") This is especially true when there is an expert and treating opinion that unequivocally states that the seizure condition is both disabling but well-controlled by medication, which is itself disabling.

Finally, it was essential for the ALJ to consider the effect of the plaintiff's medication because Dr. Coleman identified it as a basis for finding the plaintiff incapable of performing work. The side effects of seizure medication may render a claimant disabled. *See Figueroa*, 585 F.2d at 554. "At very least, the administrative law judge should have made a finding on appellant's claim regarding side effects, making it possible for a reviewing tribunal to know that the claim was not entirely ignored." *Id*.

It is clear that the ALJ simply found the plaintiff incredible and spent substantial time defending that view. And while the ALJ's consideration of the plaintiff's credibility as to his seizures does not appear objectionable, it seems that it unnecessarily influenced his view

9

of the treating physician's opinion. Because the ALJ found that seizures had been infrequent, he was implicitly dismissive of the need for medication, as prescribed, and, by extension, any effects therefrom. The Court feels more is required. Dr. Coleman cited several bases for finding the plaintiff incapable of performing work and the ALJ should not be able to dismiss that opinion essentially on the sole ground that seizures were infrequent.

In the same way, the ALJ acknowledges the plaintiff's "borderline intellectual functioning" (R. at 18) but refuses to give "any weight" to Dr. Coleman's opinion regarding disability, although based, in part, on the plaintiff's low I.Q. and poor education. (See R. at 131-32.) The ALJ did not address these portions of Dr. Coleman's opinion. The ALJ cannot accord the opinion no weight whatsoever, without a fuller treatment of the bases for it.

The defendant argues that it was also proper for the ALJ to reject Dr. Coleman's opinion because it was inconsistent with opinions of other doctors. This reason, however, was not one expressed by the ALJ. While he certainly accorded opinions of other doctors greater weight than Dr. Coleman's, he never discussed how he perceived Dr. Coleman's opinion to be inconsistent with those opinions. To that end, it is a post-hoc rationalization, which the Court cannot consider. *See Golembiewski v. Barnhart*, 322 F.3d 912, 915-16 (7th Cir. 2003) ("[G]eneral principles of administrative law preclude the Commissioner's lawyers from advancing grounds in support of the agency's decision that were not given by the ALJ."); *Steel v. Barnhart*, 290 F.3d 936 (7th Cir. 2002) ("But regardless whether there is enough evidence in the record to support the ALJ's decision, principles of administrative law require the ALJ to rationally articulate the grounds for her decision and confine our review to the reasons supplied by the ALJ."). The ALJ expressly and exclusively discounted Dr. Coleman's opinion for what, he perceived, to be inconsistencies with Dr. Coleman's own treatment notes, and not for any inconsistencies with other medical opinions. (R. at 24-25.)

## II.     Non-treating, Non-examining Physicians

The plaintiff has also argued that the ALJ was wrong to rely on the opinions of a consulting psychologist and a non-examining psychologist. In the instance of the latter, the plaintiff contends it is a due process violation for the ALJ to have considered the non-examining opinion of Dr. Lisa Varner, a psychological consultant, who he contends was not qualified to render an opinion regarding seizure disorders or the side-effects of relevant medications.

First, the Court need not fully consider the issue until such time as the ALJ has properly considered Dr. Coleman's opinion. A review of that opinion might lead the ALJ to give it controlling weight over other non-treating opinions.

Second, as the defendant notes, reliance on such non-examining opinions is not error as a matter of law. *See Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (testimony of non-examining physician can be relied upon when consistent with the record, and when medical expert testimony conflicts, ALJ decision siding with the nonexamining physician should stand); *Smith v. Schweiker*, 795 F.2d 343, 345-46 (4th Cir. 1986) (opinion of non-examining physician can constitute substantial evidence to support the decision of the Commissioner). The Fourth Circuit has said that "the testimony of a non-examining, non-treating physician should be discounted and is not substantial evidence when *totally contradicted* by other evidence in the record." *Gordon*, 725 F.2d at 235 (emphasis added). However, "a non-examining physician can be relied upon when it is consistent with the record." *Id*. (citing *Kyle v. Cohen*, 449 F.2d 489, 492 (4th Cir.1971)). Critically, "if the medical expert testimony from examining or treating physicians goes both ways, an ALJ's determination coming down on the side on which the non-examining, non-treating physician finds himself should stand." *Id*. In this case, the treating opinion of Dr. Coleman was at odds with the examining opinion of Dr. Joseph K. Hammond, also relied upon by the ALJ. (See R. at 17.) Recourse to Dr. Varner's opinion, therefore, was permissible, assuming consideration of Dr. Coleman's opinion was proper.

The Court further rejects that the evidence was simply inadmissible. The Fourth Circuit has approved the admissibility of other non-examining consultant opinions. *Kyle*, 449 F.2d at 492. The Fourth Circuit stated, "[W]e see nothing unconstitutional or improper in the medical adviser concept." *Id*.

Accordingly, it cannot be said as a legal matter that reliance on Dr. Varner's opinion was untenable. Of course, to the extent Dr. Coleman's opinion might ultimately be entitled to controlling weight, the ALJ would not be able to choose Dr. Varner's opinion over it.

On remand, the ALJ should consider all of the bases of Dr. Coleman's opinion and whether or not greater weight than *none* is warranted for it. To the extent the ALJ accords weight to that opinion upon reexamination, he should also reconsider the value of Dr. Hammond's and Dr. Varner's opinion to his determination.

## **CONCLUSION AND RECOMMENDATION**

Based upon the foregoing, the Court recommends that the Commissioner's decision be reversed under sentence four of 42 U.S.C. §§405(g) and 1381(c)(3), with a remand of the cause to the Commissioner for further proceedings as set forth above. *See Melkonyan v. Sullivan*, 501 U.S. 89 (1991). It is further recommended that the plaintiff's request for remand under sentence six of 42 U.S.C. §§405(g) and 1381(c)(3) be DENIED.

IT IS SO RECOMMENDED.

s/BRUCE H. HENDRICKS
UNITED STATES MAGISTRATE JUDGE

March 5, 2009
Greenville, South Carolina